Nonin Medical v. Konica Minolta Photo May it please the Court, Your Honors, my name is Devin Padmanabhan and I represent Nonin Medical in this matter. The District Court committed a number of errors in resolving this case on summary judgment. I will address three of them in my argument today. First, the District Court improperly construed the pivot means limitation as a means plus function limitation. Second, the District Court failed to apply the Section 112, paragraph 6 equivalence test in determining literal infringement. And third, the District Court improperly narrowed its construction when it applied it to the accused product. First, the District Court improperly construed the pivot means limitation as a means plus function limitation. Well, let me ask you something. Just in simple English, doesn't pivot means mean a means for pivoting? Your Honor, under your case law, pivot means, there's a presumption that arises that it should means, mean anything other than a means for pivoting. Yes. What does it mean? It connotes structure. I didn't ask you again about connoting structure. If it doesn't, do you contend that pivot is what? A noun? Yes, pivot is a noun. Well, that's certainly rather poor English, isn't it? If it's a noun, because the word means is unnecessary. And why didn't they say a pivot? That's how you would describe a pivot. And they could have said a pivot. But why didn't they? They could have said, but doesn't the fact that they didn't say a pivot, they just said pivot means, suggests it's not intended as a noun. I think if you look at the entire record, the patentee actually intended it to be a noun. They told the patent office that it was a structural limitation. And the way they put it in, even though they use the word means, I think given that the pivot connotes structure, it would rebut any presumption to apply what section 112 says. What structure does the word pivot connote? The structure that the word pivot connotes is two structures that rotate relative to each other. So it would be a simple hinge would be a pivot. Simple hinge would be a pivot. And a post to which two things were attached and swung around would be a pivot. That would have a pivot, yes. Now, following up on Judge Friedman's comment, I looked at every use of the word pivot in the specification. It was never used once as a noun. Every other time it was used as a verb. Your Honor, actually there is one use of the word pivot as a noun, which is in original claim five. The word pivot is used, and it says pivot means later on in that claim it refers to it as a noun. But even though the patent... When you say original claim five, that's not in the patent anymore, is it? I don't know what number that claim issued as, Your Honor. It did issue. I just can't remember which claim it issued as. But in terms of the specification itself, pivot is used in the specification to describe the function. But under your case law, that doesn't prevent the word as it's used in the claim, especially because the claim language provides both location and extent of that structure to be construed as a non-1126 limitation. What seems to be happening here is an unintended, unintentional, and unnecessary delicacy of instruction. The real problem, is it not, is whether or not whether there's equivalence of the structure in the specification, but whether there's equivalence of the pivoting function. Isn't that the reason why you're so concerned that there was a mistake in calling it means plus function? It's equivalence of... And why should that make a difference on the record? That's really what I'm leading up to. It should come out the same way, should it not, in terms of whether there is or is not infringement under some equivalency of something, whether it's equivalency of the structure in the specification, or whether it's equivalency of the usage pivot, viewing it as a structural term rather than as a noun or an adjective or whatever it is in congruence with means. Yes, your honor, and there's a two-part answer to that question. First, there is no debate that the infringing device functions, forms a function of pivoting. There is, the district court never addressed the question of equivalency at all, so while there is evidence in the record to suggest that the structure of the infringing device would be an That's an issue the district court never addressed. Well, the district court said there were so many differences that there can't be equivalency. That would be, there's at least a fact issue as to that, your honor, because there is evidence, there's detailed expert reports in the record that show that it would be an equivalent to one of skill and the art, and that would not be appropriate, that would not be a decision that the district court, it's a factually decision that the district court should not make on summary judgment. Now you're talking now about the specific function of whether or not there is in fact that kind of motion between the two parts. I'm sorry, actually the specific motion is not an issue at all. They, they're, I don't think they're debating that it actually pivots, where the issue is, if it doesn't pivot, if there's no motion, it can't pivot. No, I think they agree that it, I think both parties agree that it pivots, where the issue for equivalence is, is in the district court for this case, the judge as part of the pivoting structure construed the claim to require a three-part spring, and the question for infringement really is, is that three-part spring equivalent under section 12, section 112 paragraph 6 to the spring they use in their device. But the, the, the finger clip in the accused device doesn't, doesn't pivot, it doesn't move around an axis. So how is there a, a pivot? The finger clip in the, in this device has a purple housing on top, and that actually pivots with respect to the lower housing. And so what, what is the housing that you're talking about? The lower housing. Is it the dust cap along the top or are you talking about the, the actual finger pad and the top of the finger pad that contains the LED? The, what you're calling the dust cap would be the one housing that contains the LEDs, and then the second housing would be the housing that has the battery. We're talking about the finger clip where the finger goes now, right? Yep, where the finger goes, there is a... And there's an LED in top, and there's a finger pad at the bottom, right? And the LED extends from the lower housing, but the second, the other second housing is actually the, what you're calling... I thought the LED was in the upper housing. It is contained within the upper housing, but it's not physically attached to the upper housing, which is what the district court, in addition to, the district court found no literal infringement because they actually looked at the physical attachment. They, they required that, that LED structure that you're talking about attached to the cap, the dust, as you're calling it, the dust cap. But it's the first housing, the dust cap contains the LED structure, and the second housing is where, at the top of the finger pad. No, this isn't what I'm calling the housing, it's what you're calling the housing, right? The dust cap. The dust cap is... You call that the housing, right? Yes. Why, by the way, is that the housing? The housing, I would have thought, was the thing that encased the finger, not the dust cap. And that actually does contact the finger. It's, it's what is moved up, it's what pivots... I understand how it may contact the finger, but I, it's so out of context with the patent's use of the term patent that I, that I'm trying to understand why you would identify that as the housing, rather than the part that actually contacts the finger. In normal operation, that dust, the dust cap does perhaps at the edge touch the finger, but the part that is in contact with the finger having some relevance to taking the reading from the, the blood is not the dust cap. And therefore, why would you call the housing the dust cap? It contains that portion of the circuitry that's used to... Contains it, it happens to be under it, but what, it's not contained in it? It's, it's within the volume that's defined by the dust cap, and that would be the ordinary meaning of contained within. Why, why wouldn't you just call the housing the, the finger pad and the LED containing upper portion that contacts the finger? That, that is all part of one, that extends from the lower housing, but... You think it's all... It's all without the cap, that device is not going to operate, and it's with the cap that the device... I spend more time trying to figure out why you did this than anything else in the whole case, and I still can't figure it out. You're not making it clear to me. Okay. Your honor, the device has to have... Two housings, yes, and I, the housings as described in the patent and in every way illustrated are the finger clips upper and lower parts. In this case, you're saying it's a dust cap, not anything that to do with the finger clip, and so I'm very confused by that. It does have something to do with the finger clip in that it is part of what is, what helps hold the finger in place. It's what you push your finger through, and it's the entire structure which is there, and just as in the patent, the LEDs are contained within the upper housing to be able to do the reading. In addition to the patent office, in addition to telling the patent office that pivoted structure, your case law in Cole as well as in Viroco would... Can I mention one other thing? You know, these days we have these fancy computers. I asked my clerk to run us a search on your patent. There's no claim in it with the word pivot alone. He just did a patent search, he just did a word search on your patent. I just knew that it was in the original... It was in the original, it's not in the issued patent unless computers don't work. No, I'm sure we'll take it out of the next case if that makes sense to you, because your issues are very similar, I gather, in both cases. Yes, they are. Okay, then continue through your rebuttal period, and we'll add your rebuttal on that. With regard to your case, the only other point I want to make on the case law is this case is very similar to your decision in Cole, and it's also very similar in terms of facts as to your explanation in unidynamics as to why this pivot means should be construed as a structure, as not a means plus function claim, but as a normal non-means plus function claim. The district court, with regard to its second error, really did not ever do a 112 paragraph states analysis, which by itself should be a reason to send this case back. They didn't do that with respect to pivot means, where they simply looked at the identical structure of the springs, and then the judge specifically carved out all the spring structures that existed prior to 1995, and said because they were prior to 1995, did not think they were equivalent, whereas under Trumanada, this case, this court specifically said for purposes of section 112 paragraph 6, those are the spring structures that we have to look at to determine equivalence, and that was never done in the district court. The third error that the district court made really is that it also narrowed the constructions when it was applying them to when it was applying them to the accused device, and what the first example of that is in the limitation that the first and second housings are in electrical communication, and it's this court added the two additional limitations that there'd be physical attachment to the to the housing, which is nowhere in the construction. It's not in the claims, and it's not required by the specification, and for that for that reason, the district court's analysis is improper. Second, it also required that the LED arm pivot with the housing, and that's also not required by the claims or the specification, and for that reason, the district court's analysis is improper. Okay, thank you. We'll hear from the comments side. Mr. Stedman. Good morning, Your Honor. Good morning. May it please the court. I am Paul Stedman of the law firm of Kirkland & Ellis, and I'm here on behalf of both of the athletes. Okay. The only we believe that the issues in this case are really relatively simple and are spelled out well in the briefs. The only point that I wanted to make affirmatively this morning is to draw the court's attention to two statements in the appellant's briefs. One, at the blue brief at page 29, line 2. This is where Nomen really reveals what it's trying to do. According to Nomen, the limitation pivot means, which allows the housings to pivot, must be interpreted, and this is what their brief said, and we're at page 22, page 29, line 2. Got it. They want pivot means 2, which allows the housings to pivot, to be interpreted, to incorporate any structure that performs a pivoting function. Of course, that's not any arcane kind of hidden motive. That's the reason for the argument about why this isn't a proper means plus function. Well, I think it's not hidden or arcane, but it is directly contrary to the statutory mandate of section 112, paragraph 6. That section says you can claim a function. That's exactly why they're saying the district court erred in applying 112.6, and I think it would be interesting, as long as we're here, to understand not only your position as to why the structures, the structure and the specification are not equivalent, but also why equivalency doesn't apply on the theory in that sentence on page 29. Well, I think that's what I was trying to explain, and that is that the statute does not allow you to claim in purely functional terms. The statute does not allow you to claim any structure which performs a function of pivoting. If you put your claim in that form, then you are required under 112.6 to refer to the specification, so that was the point I was trying to make. But the issue is whether it was properly interpreted as being in that form. It was properly interpreted as being in that form. Why? Because the word pivot is actually in the claim, so you don't really need means in our Kimberly-Clark case and others. We say that when the structure is in the claim, then it's not means plus function, even though you've used the word means. The court's decisions that find the claim using the word means that is outside 112.6 always find sufficient structure for completely performing the claimed function. I don't think completely is, in our cases, sufficient structure for performing the claimed function. It's probably a fair statement. Your Honor, my recollection is there's at least one claim, one of your decisions that says completely performed, but in any event, here, the only word is pivot. That does not tell you how to perform all three of the claimed functions. It does not tell you how the thing pivots, which is very different in the accused device, which only pivots in one direction, than it is in the claim device, which pivots in two. It does not tell you how to grip a finger. The word pivot by itself does not tell you or tell you enough structure to grip a finger. And third, it does not tell you interconnecting, which is also required by the claims. There are three things the pivot means must do. It must interconnect, it must allow the two housings to pivot, and it must grip a finger. The word pivot by itself in no way connotes sufficient structure to do that, whether it completely performs it or whether it's just sufficient. If the claim has a gripping means, why does the pivot means have to perform a gripping function? The claim says finger gripping means comprised of a pivot means. So the words finger gripping means don't tell you anything. Comprising. Correct. So it's not limited. Right. We did not advance an argument based on the words finger gripping means. We only advanced our argument based on the pivot means structure. The pivot means has to releasably grip a finger, right? That's correct. That's what the line, the claim says. That's correct. And the word pivot does not... Does this one releasably grip a finger? This one in the accused device? Yes. That was not an issue below, Your Honor, but arguably, yes, the Pulse Ox2 would releasably grip a finger. Then why is, why are you raising that as a issue? The issue is not what is located in the accused device. The issue is whether the word pivot by itself is sufficient structure to perform all of the recited functions recited in the claim. So we're still on claim instruction. We're not on infringement. The equivalency under 112.6 is the equivalence of the accused structure and the structure in the specification. Okay. But you're just saying we don't look at the once we get to that portion of 112.6, we would look at the accused structure. And the accused structure, as it turns out, is the same structure that the patentee said when they were trying to get around the Goldberger reference. It contained a completely different kind of spring element. That is what they said. So a spring element cannot be equivalent if it is completely different than the invention. The reason they did that, the reason they did that is that under means plus function, the spring, the W-shaped connected spring that's shown in the patent figures and described at length in the specification, that is the only structure that performs the recited functions. It performs the interconnecting, it performs the pivoting, and it performs the finger to perform all of those functions. So once we look at the specification, we find that spring. That is the structure to which we must compare the accused device. But during prosecution, they had already said that the spring and hinge structure had a completely different kind of spring mechanism. That's what they said. So the district court didn't have to then go through and say, is it the same function, is it the same way, is it the same result? Under Ballard, which the district court correctly enunciated in its opinion, if the patentee disclaimed or said this is not equivalent in its specification or in the prosecution history, then it is simply not equivalent for purposes of 112.6, and it's not equivalent for purposes of the doctrine. So the district court was done. So you really don't care whether 112.6 applies or not? Your Honor, I believe the result would be the same whether it does apply or not. We urge the district court to follow Phillips and correctly apply the claims before applying them to the accused device, and I think 112.6 does apply. But even if the court found that it didn't apply, we would say that they had said it was a completely different kind of structure. Are there any other distinctions you want to point out to us? The other thing I wanted to say was that they made the same kind of argument about program means at great brief page 27. Once again, they took this time what they admit is a need plus function limitation, but they urged the court to find that the correct construction is any algorithm that this court was very, very clear in WMS gaming that a means plus function limitation that relates to a computer program running on a microprocessor must be limited to the algorithm shown in the specification. Here, that algorithm is shown in figure 18. It's a very specific algorithm. There is no evidence in the record from which this court or the district court could have even evaluated the equivalence and under rule 56 of the federal civil procedure, the burden was on Nomen to come forward with that evidence if they had it in order to prove the equivalence. Having failed to do so, there simply can be no equivalence. You're saying they presented no evidence of equivalence or that you don't think it was the right kind of evidence? There was no evidence on the issue of program means equivalence, Your Honor. There couldn't be because they didn't put any evidence in of the structure in the accused device. There's no evidence. We're in the claim. What clause of the claim are you pointing to? I'm in 523 patent claim 1, the last clause of the claim. The electronic means? Being carried by the grip means? No, I'm sorry. I'm in 523 patent claim 1, the last clause of the claim, which is program means operatively connected to the pulse oximeter means and display means for sensing the presence of a finger and switching the apparatus from a low power state to a normal power state. In WMS gaming, the court made clear that there is a program means, right? You're just saying that it's a different program? I'm saying there's no evidence of the program. In fact, in the accused device, had they found the evidence and put it forward, what it would have shown me is that it's actually a mechanical switch that sends a hardware wake-up call to a microchip. It's not a program at all. So had the district court gotten the evidence, it would have found no equivalence anyway because it's not a computer program. It's not a program? What is it? It's a hardware switch, Your Honor. This is the accused device. When the cover opens... It's not computer-operated at all? It's not computer-operated. It is computer-operated, it's just not algorithm-operated. There is a microchip in here, but the microchip starts the computer program once this switch has been activated and a small voltage is applied to the interrupt pin. So it says operatively connected. Operatively connected is not an issue. It's the force sensing. It's the means for sensing. Program means for sensing. It's very strange. The whole thing's computer-operated and you say it's not programmed. It is programmed in order to read blood and pulse measurements. It says program means operatively connected to the oximeter means. Correct. There's no doubt that there is a program means in here operatively connected to the other elements. It's just not a program means for sensing the presence of a finger and switching the apparatus from a low-power state to a normal state. In that device you're holding in your right hand, where does the finger go? Finger goes here, Your Honor. This has been disconnected. That's the upper housing, right? The upper housing has nothing in it ordinarily, is that right? There's a plastic piece that I removed to get this off, but there's a plastic rubber coating that rests on the finger so that it's comfortable. But it's just a shell, basically. This is just a shell. That's right. And there's one of these in the record. This was exhibit one. A full one of these was attached as exhibit one to our papers so both the district court and this court can examine it at length if it wishes to. So the LED containing upper arm there does not contact the finger? It does not contact the finger. This is the first housing. This is a housing with all of the electrical components in it. This thing, which they insist on calling housing, does not contain any electrical components. It contains nothing other than a soft plastic thing to protect the finger? That's correct. Its only function is to keep the light out from the LED so you can get accurate reading. And as I said, when this is sold, these two are connected. I've taken them apart so that it's easy to see what's inside. So the pivot on this device does not move the LED containing upper arm? That's correct. And the district court noted that specifically. The district court analyzed their argument that the LED arm was the second housing. And it said that can't be the second housing. Even if I were willing to carve that off and call that the second housing, the claim would fail against this device because the second housing must pivot. Does that upper arm move? This upper arm does not move. It does not move. Whereas under the patented device, the top housing moves down on the pivot. That's correct. To make contact with the finger. As I said, this is exhibit one. I'm happy to hand it up to the court. Would you please? Well, in this case, I would like it. How would you like me to do that? When you're finished with your argument, give it to the bailiff, please. Would you want to take a look at it right now? When he's finished, that's just fine. Okay, I will do so. I have no other points to make in the balance of my time. Thank you, Mr. Steadman. Okay, Mr. Padman. I'm sorry. Now I want to follow the court's direction. By the way, now I understand why you call it a housing. You don't have to take any time on it, and I understand your argument better now. And there's actually a finger pad in there. Yep, I got it. With respect to his argument on the functions, we don't actually— we agree with him on the interconnect. We believe there is interconnect, and I don't think that's been in dispute, and that there's pivot. On the releasably gripping, we think that's part— I don't think the lower court held that that's one of the functions that pivot means, and we don't think that actually impacts the decision on whether pivot means should be construed under 1126 or not. His analysis there is, I think, only going to this prosecution history point, and let me make that point very clear. The original claims that were filed in this case, Claim 4 had a pivot means function, and that pivot means function is the language that ends up in Issued Claim 1 of the 052 patent. Claim 32 was a separate claim that was originally filed that had a very specific description of a pivot means that included this three-part spring structure. During prosecution, and very consistently throughout, the patentee distinguished the specific three-part spring structure that was in the claim, specific claim language to it, from the prior art, which is the Goldberger reference. But when it came to the patent office rejecting Claim 4, the original Claim 4, based on the same Goldberger reference, the patentee did not, at any time, distinguish the pivot means that was claimed in Claim 4 from the Goldberger reference. But the issue is the spring structure at that stage, and you make a strong argument of Estoffel as to equivalency of their spring structure. As to the spring structure, if it was all as to Claim 4, that's part of the reason with original Claim 4, it would be improper, limited to just the spring structure, especially given the disclosure in the patent. And nonetheless, the original Claim 4 was never distinguished on those grounds. In fact, we told the patent office implicitly that the language that is issued in front of you in original Claim 4 is language that would cover the structure of Goldberger, because we never distinguished that language from Goldberger. And as to the WMS Gaming point, and this is a minor point, the section that he quotes from WMS Gaming really has to do with claim construction. It's not in front of you today. No one's challenging the construction of the program. Well, didn't you disclaim mechanical switches when you were distinguishing yourself over O'Connor? Yes, we did distinguish mechanical switches. But what we didn't distinguish, if you look at the language, what we didn't distinguish was use of mechanical sensors with the computer program. When you look at that language, the language that they cite against O'Connor, O'Connor is simply a physical switch, and it's just an on-off. Mr. Stedman says they have no program. It's just a mechanical switch. And, Your Honor, if you look at Mr. Teriuchi's... A hardware switch, but that's... And they don't dispute there is a computer program. There's a little bit of... The record is not real clear on the scope of the computer program. Mr. Teriuchi initially said there is no computer program to detect the absence of a finger. In the supplemental, he then suggests there is a computer program that detects the absence of a finger. And what we wanted was a Rule 56 deposition of Mr. Teriuchi because that is the only fact or the only set of facts they rely on for the summary judgment. We haven't had a chance to press Mr. Teriuchi and cross him on his declaration. So I can't give you the details of how their computer program works because we didn't get a chance to depose him before the summary judgment order came down. And so that's all I can say as to the computer program. I know it's there. When we tested it, put a declaration in just by observation, and Mr. Eric put that in, he thought the computer program did detect the presence of a finger. He also thought the computer program detected the absence of a finger. But Mr. Teriuchi in his declaration seems to suggest we are right that it does detect the absence of a finger. He was silent as to the paragraph on the presence of a finger. It's unclear what he's exactly saying. But it goes to the main issue that we can't tell. That's why we asked for the Rule 56-F deposition and 56-F discovery, including deposition of Mr. Teriuchi and putting in an expert report based on what we find from Mr. Teriuchi. And we didn't get that opportunity. Okay. I think we've heard the arguments on this. Hand that to the clerk there. Your Honor, can you put the pad on before he gives this to you, if he's got the pad? No. I'm just going to hand it to her the way that it is. It's got all the parts in it.